| 26 | 55 |
| 128a | 553 |
| 26 | 55 |
| 64h | 386 |
| 26 | 55 |
| 90h | 437 |

In the matter of the petition of JOHN BERRY, Receiver of the Atlas Insurance Company,

Where, after an execution has been issued and a levy made thereon, the defendant appeals from the judgment and gives security upon the appeal, the appeal will not have a retrospective effect, so as to discharge the lien created by the levy.

Whatever rights or liens are acquired by a levy are treated as if they were vested rights, not to be superseded by personal security, but as suspended only until the decision of the appellate court. After the appeal is dismissed, the respondents are entitled to resume proceedings on their execution, and have priority over a subsequent execution.

The appointment of a receiver of an insolvent corporation takes effect from the time of granting an order for a reference to appoint a receiver; and from that moment no act can be done affecting the property of the corporation, either by the corporation or its creditors.

The object of the statute authorizing proceedings against insolvent corporations is to take away the franchises of the corporation, and its powers of action, immediately on a petition for a receiver being filed, if the prayer of the petition be finally granted.

And although the receiver cannot take possession of the property of the corporation, or be deemed vested with the estate, before he is appointed, yet when his appointment is completed, the estate vested in him relates back to the time of granting the order for a reference to appoint a receiver.

APPEAL from an order made at a special term, denying the prayer of the petition. On the 23d of November, 1854, B. Bidwell and J. W. Banta recovered a judgment, in the superior court of Buffalo, against the Atlas Mutual Insurance Company. On the 3d of January, 1855, the plaintiffs, by virtue of an execution issued upon that judgment, levied on certain desks, and an iron safe belonging to the company. The company appealed from the judgment to the general term. Smith and Chesbrough became their sureties upon the appeal, and to protect them the company assigned to them securities to the amount of $9000. The judgment was affirmed by the general term, and an appeal to the court of appeals was taken. During its pendency, on the 5th of March, 1856, proceedings were taken for the appointment of a receiver, and an order was made, to show cause why a receiver should not be appointed and an injunction granted, and in

the mean time an injunction was issued.  On the 11th of March, shortly after ten o'clock A. M., an order was made, that a receiver be appointed, to take charge of the property of the company ; and it was referred to a referee " to appoint a receiver and take from him the requisite security."  And it was declared that on filing his report and the security, such receiver should be empowered to take charge of the property, &c. of the company, and that he be invested with all the estate of the company from the time of the filing of such security, and should be the trustee of its estate.  The order also perpetually enjoined the company from paying any debts or exercising any corporate rights, &c.  On the 25th of March, 1856, the referee appointed John Berry such receiver. On the 11th of March 1856, after 3 o'clock P. M., D. R. De Wolf obtained judgment in the superior court of New York, against the company, and on the same day the sheriff levied on the same property which had been levied upon under the execution in favor of Bidwell and Banta.  The receiver determined to compromise the suit brought by Bidwell and Banta, and with the consent of the court he settled with them, they receiving from Smith and Chesbrough the sureties, less than $3200, and assigning the judgment to them.  The receiver agreed with the sureties to reimburse them from time to time from moneys to be received by him, and they reassigned the securities to him.  The receiver then presented a petition asking leave to pay the sureties out of the proceeds of the property levied on under the execution in favor of De Wolf; the superior court having authorized him to sell in place of the sheriff, and to hold the proceeds subject to the order of this court.  The court, at special term, made an order denying the prayer of the petition, and the petitioner appealed.

*C. C. Egan*, for the appellant.

*Young & Ruthven*, for De Wolf.

*By the Court*, MITCHELL, P. J.  The receiver presents his claim on two grounds : first, that the first levy was under the

In the matter of John Berry, Receiver, &c.

oldest judgment, and that the appeal and security given thereon did not discharge the levy; second, that the appointment of the receiver took effect from the time of granting the order for a reference to appoint him, and that from that moment no act could be done affecting the property of the company, either by the company or its creditors. The counsel for De Wolf, conceding that such may be the effect of an assignment to a receiver, under proceedings in ordinary actions supplementary to executions, insists that the statute controls in this case, and that it dates the power of the receiver from the time of his appointment and security being filed, which was fourteen days after the levy by De Wolf.

Under the revised statutes a writ of error with sureties and an order of stay, if an execution had been issued, but not fully executed, stayed the further execution thereof. (2 *R. S.* 597, § 30.) If the execution had been levied but no sale had taken place, it stayed the sale. (*Delafield* v. *Sandford*, 3 *Hill*, 473.) If an appeal were taken and a bond given but not in due form, and leave were given to amend the bond, and then execution issued and was levied, the court, on the amendment being completed, would supersede the execution, thus putting the appellant where he was when the amendment was allowed. (*Clark* v. *Clark*, 7 *Paige*, 607.) If an appeal were taken from a justice of the peace to the common pleas, it released goods levied on, from the lien. But this was by virtue of the express words of a particular statute. (2 *R. S.* 259, § 192, &c. *Wilson* v. *Williams*, 18 *Wend.* 581.) The code has not the minute provisions of the revised statutes as to the effect of a writ of error or appeal, and security given thereon. It provides, in general terms, that "if the appeal be from a judgment directing the payment of money, it shall not stay the execution of the judgment unless" an undertaking be given, "to pay the money." Before the revised statutes, a writ of error did not stay an execution, after levy. (*Delafield* v. *Sandford, supra.*) It might be a question whether the language of the code does not restore that law; but a literal construc-

In the matter of John Berry, Receiver, &c.

tion of it, and the general principle that it ought not to be construed as changing the old law, when it has substituted language that may embrace the old, would sustain the amendment made by the revised statutes. Still this general principle pervades all the provisions of the revised statutes (and of the code by consequence) that the appeal and security have no retrospective effect. They do not undo any thing already done, or take away any lien once created. They only stay an execution if it has not issued, or its *further execution* if it has issued; so that if issued and a levy was made, the sale under the levy was stayed, but the levy was not interfered with. Whatever rights or liens were acquired were treated as if they were vested rights not to be superseded by personal security, but suspended only until the decision of the appellate court. This lien continued, even as to real estate, and made it necessary that the legislature should interfere, and by a special amendment of the code (§ 182) enable the *court*, on notice to the respondent, to direct an entry to be made on the docket of the judgment, "secured on appeal." This cannot be done except by leave of the court, and on motion, and is not the necessary effect of the appeal. When the order and entry are made, the lien of the judgment is not discharged as to all persons, and not at all as to subsequent judgment creditors. The judgment then only "during the pendency of the appeal ceases to be a lien on the real property of the judgment debtor as against purchasers and mortgagees in good faith." In other words, purchasers and mortgagees in good faith may then, during the appeal, deal with the real estate as if there were no lien on it; but they cannot after the appeal is disposed of, and as to subsequent judgment creditors the lien remains undisturbed. This shows that in this case the respondents, after the appeal was dismissed, were entitled to resume proceedings on their execution, and have priority over a subsequent execution. Mere delay would not take away this lien. (*See matter of Clark*, 3 *Denio*, 167.)

As to the second question. Art. 2, title 4, ch. 8, pt. 3 of

In the matter of John Berry, Receiver, &c.

2 R. S. (*p.* 462) relates to proceedings *against* corporations. Art. 3 of the same title relates to proceedings by them for their *voluntary* dissolution. Section thirty-six authorizes the court of chancery, on a judgment and execution returned unsatisfied, against a corporation, " to sequestrate the stock, property, things in action and effects of such corporation, and to appoint a receiver of the same." Sections thirty-nine, &c. authorize the court, when a banking or insurance company "becomes insolvent or unable to pay its debts," by injunction to restrain it from exercising any of its corporate rights and from collecting or receiving any debts or demands, and from paying out, or in any way transferring or delivering to any person, any of the moneys, property or effects of such corporation until the court shall otherwise order, and to appoint one or more receivers of the property and effects of the corporation ; and declare that the *receiver* "shall possess all the *powers* and *authority* conferred, and be subject to all the obligations and duties imposed in article three of that title upon receivers appointed in case of the voluntary dissolution of a corporation." Sections 67 and 68 (*p.* 460) declare that the last mentioned receivers shall be vested with all the estate, real and personal, of such corporation, from the time of their having filed the security "therein required, and have all the power and authority conferred upon trustees to whom an assignment of the estate of an insolvent debtor may be made pursuant to ch. 5 of part 2 of the revised statutes." Section 71 declares all sales, assignments, transfers, mortgages and conveyances of any part of the property of the company "made after the *filing of the petition* for the dissolution thereof," and all judgments confessed by such corporation after that time, absolutely void as against the receiver and the creditors of the corporation. Section 79 directs the payment by the receiver, 1. Of debts entitled to a preference under the laws of the United States ; 2. Of judgments against the corporation, to the extent of the value of the real estate on which they shall be liens ; and next, of all other claims, *pro rata.*

The act respecting absconding and non-resident debtors avoids all sales, and judgments confessed, after the first publication of the notice of the attachment, and makes a voluntary payment by a debtor, to the insolvent, at least presumptively fraudulent as against the trustees.

The object of the act is to take away the franchises of the corporation, and its powers of action, immediately on the petition being filed, if the prayer of the petition be finally granted. The court adjudges that at that time it was insolvent and then unable to pay its debts, and then liable to have all its property pass out of its control into the custody of the court and of a receiver to be appointed by it. Such is declared to have been its condition at that time, and not merely when the final order was made. Accordingly, any voluntary disposition of its property, made after that time, is absolutely void ; and any judgment confessed by it is also absolutely void. Such judgment is not even evidence of a debt. Subsequent involuntary judgments may be evidence of a debt, and in that respect alone have advantage over a judgment confessed. If they could give a lien on the property they would be a ready means of indirectly preferring favorite creditors ; and would thus defeat the object of the law, which forbids such direct preference, and which, by taking away from the company its franchises from the time of the filing of the petition, from that time extinguishes its life and makes it incapable of having a judgment entered against it. The 67th section is not inconsistent with this. It does not profess to pass on the title which creditors of the company may acquire against the company, but is intended to prescribe the period at which the estate of the company shall be *vested in the receiver,* so that thereafter the debtors of the company may be bound to settle with him alone, and so that after that time, also, he shall be enabled to take the possession. Before that time, the receiver cannot take the possession, or be deemed vested with the estate ; as an executor since the revised statutes, and an administrator at all times, is not deemed vested with the estate

of the decedent until letters are granted by the surrogate ; but when so vested, the estate in him relates to the time of the death of the testator or intestate, and all judgments, after such death, are inoperative as against him. Such also is the effect of the order of the 11th of March, taking away from the corporation its corporate rights and franchises, and thus destroying that artificial life which the law had given to it.

The order appealed from should be reversed, without costs, and the receiver be authorized to apply the proceeds of the property levied on under the execution in favor of Bidwell and Banta towards satisfying so much of their judgment as they finally agreed to reduce it to.

